# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| MARTHA MURILLO, ET AL., | § |
| Plaintiff, | § |
| | § |
| | § |
| v. | § No. _____ |
| | § |
| | § |
| JOHNSON & JOHNSON, and ETHICON, INC., | § |
| | § |
| Defendants. | § |
| | § |

---

## DEFENDANTS' NOTICE OF REMOVAL

---

In accordance with 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Johnson & Johnson and Ethicon, Inc. timely remove this pelvic-mesh, product-liability action styled *Martha Murillo, et al. v. Johnson & Johnson, and Ethicon, Inc.*, which was filed by 204 individual Plaintiffs in the 68th Judicial District Court of Dallas County, Texas, to the United States District Court for the Northern District of Texas, Dallas Division.[1]  The United States District Court for the Northern District of Texas has original subject-matter jurisdiction of this civil action under 28 U.S.C. § 1332(a) because there is complete diversity among all properly joined and served parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. Alternatively, this Court has original subject-matter jurisdiction under 28 U.S.C. § 1332(d)(11) because this is a mass action and the aggregate amount in controversy is over $5 million.  In

---

[1] By removing this case to this Court, Defendants do not waive any defenses, objections, or motions available under state or federal law.  Defendants expressly reserves the right to move for dismissal of some or all of Plaintiffs' claims and/or seek dismissal on grounds of lack of personal jurisdiction, insufficient or improper service of process, improper venue, or forum non conveniens.

support of removal, Defendants further state as follows:

1.  On or about March 3, 2016 204 Plaintiffs filed a case styled *Martha Murillo, et al. v. Johnson & Johnson, and Ethicon, Inc.* in the 68th Judicial District Court of Dallas County, Texas, Cause No. DC-16-02528.[2]  One day after Ethicon, Inc. filed its special appearance and answer subject to the special appearance, Plaintiffs' counsel nonsuited 10 Plaintiffs.[3]  In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the docket sheet and all process, pleadings, and orders in the state court file are attached as Exhibit A.  Each one of the 190 remaining female Plaintiffs asserts claims for (1) Negligence, (2) Strict Liability, Design Defect, (3) Strict Liability, Manufacturing Defect, (4) Strict Liability, Failure to Warn, (5) Breach of Implied Warranty, and (6) Breach of Express Warranty.  (Orig. Pet. ¶¶ 39–68).  The four male Plaintiffs assert claims for loss of consortium.  (Orig. Pet. ¶ 70(k); *see also* Ex. 1 to Orig. Pet.).  Plaintiffs' claims allegedly concern various types of pelvic mesh medical devices allegedly manufactured by Defendants.  (*See* Orig. Pet. ¶ 12).

2.  Thousands of pelvic-mesh, product-liability cases have been filed in or removed to federal district courts across the country, based on diversity jurisdiction, in which the plaintiffs allege injuries similar to those claimed by Plaintiffs here, allegedly arising from the implantation of various mesh products manufactured by multiple companies.  Accordingly, the United States Judicial Panel on Multidistrict Litigation ("JMPL") has established six separate Multidistrict Litigations ("MDLs") for claims related to each manufacturer's mesh products.  The MDLs are pending in the United States District Court for the Southern District of West Virginia.  *See, e.g.,*

---

[2] Plaintiffs also filed three nearly identical Petitions to the one in this case in the same county:  *Barbara Kurtz v. Johnson & Johnson, and Ethicon, Inc.*, No. DC-16-02488 (162nd Jud. Dist. Dallas Cnty.); *Joyce Adams, et al. v. Johnson & Johnson, and Ethicon, Inc.*, No. DC-16-02524 (68th Jud. Dist. Dallas Cnty); *Maritza Ortiz v. Johnson & Johnson, and Ethicon, Inc.*, No. DC-16-02500 (116th Jud. Dist. Dallas Cnty.).

[3] These Plaintiffs are the following:  Gerri Moore, Charla English, Elsie May Arb, Helene Lebied, Kimberly Archuleta, Laura Rodriguez, Mary Greco, Theresa Galano-Burkett, Brenda Pye, and Norma Lee Setum.

*In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 844 F. Supp. 2d 1359 (J.P.M.L. 2012) (Transfer Order granting centralization of Ethicon MDL No. 2327 ("Ethicon MDL")).

3. Defendants intend to transfer this case to the Ethicon MDL and will soon provide the JPML with notice of this case under the "tag-along" procedure required by the JPML rules. In addition, Defendants will seek a stay of the proceedings in this case in the interest of judicial efficiency and consistency. In cases similar to this multiple-plaintiff suit, other federal district courts across the country have stayed the proceedings to allow the JPML to resolve plaintiffs' objections, if any, to the JPML's Conditional Transfer Order ("CTO"). These stays will ultimately allow the Honorable Joseph R. Goodwin, the United States District Judge presiding over the Ethicon MDL, to rule on any motion to remand filed by Plaintiffs, which permits consistent rulings and fosters other judicial economies.

4. Plaintiffs seek to evade the Ethicon MDL by joining at least one Texas Plaintiff with other Plaintiffs residing in "various States throughout the country," and jointly filing all 204 individual claims as one suit in Texas state court. (*See* Orig. Pet. ¶¶ 2–3). Plaintiffs have stated the residence of only one Plaintiff—Ms. Martha Murillo, "an individual and resident of the State of Texas." (*See* Orig. Pet. ¶ 2).

5. Under the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746, 760–61 (2014), none of the remaining Plaintiffs other than Martha Murillo (the "Other Plaintiffs") can establish personal jurisdiction over Defendants in Texas. *Accord Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431–33 (5th Cir. 2014); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011). As a result, this removal is proper. In the interests of clarity and efficiency, Defendants urge this Court to rule on personal jurisdiction *before* determining subject-matter jurisdiction. This Court has every right to do so, and in the exercise of its sound

discretion ought to do so where, as here, a case presents a straightforward question of personal jurisdiction and a more difficult question of subject-matter jurisdiction. *See Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574 (1999) (holding that, in a case removed from state court, a district court has discretion to resolve issues of personal jurisdiction before subject-matter jurisdiction, and affirming the district court's decision to do so in a case that presented a "straightforward" personal-jurisdiction question and a "difficult" subject-matter-jurisdiction question); *followed, Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir 2012) ("[W]e see no error in the district court's decision to dispose of the personal jurisdiction issue first and in not proceeding further after concluding that it lacked personal jurisdiction over Lexware."). As discussed below, the personal-jurisdiction analysis leads to the dismissal of the Other Plaintiffs, leaving complete diversity between Defendants and the sole remaining Plaintiff, Martha Murillo.

6. Even if the Court chooses to decide subject-matter jurisdiction before resolving personal jurisdiction, Defendants' removal is still proper. This Court can exercise subject-matter jurisdiction over this case because the properly joined parties are completely diverse. The Other Plaintiffs are improper parties for three distinct, independent legal reasons. **First**, they are improperly joined. Under the doctrine of improper joinder, the Court can simply ignore the citizenship of the improperly joined parties who have no possibility of recovery, dismissing them from the case, and showing that there is complete diversity between the remaining parties. *See Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004). **Second**, the Other Plaintiffs are not proper parties under Federal Rule of Civil Procedure 20(a). *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F. 3d 529, 533 & n.7 (5th Cir. 2006) (Smith, J.) (noting that 28 U.S.C. § 1441(b) refers to "properly joined" parties rather than "nonfraudulently joined parties"). **Third,**

joinder of the Other Plaintiffs is a sham—they are included solely in an exercise of jurisdictional manipulation, which the Supreme Court has repeatedly explained federal courts should guard against and prevent. *Mississippi ex rel. Hood v. Au Optronics Corp.*, 134 S. Ct. 736, 745 (2014). Under these circumstances, this Court should sever and dismiss the Other Plaintiffs from this case, and then determine that subject-matter jurisdiction exists over the remaining parties—that is, Ms. Murillo and Defendants—based on complete diversity under 28 U.S.C. § 1332(a).

7. In the alternative, this suit constitutes a mass action under 28 U.S.C. § 1332(d)(11), and this Court therefore has original jurisdiction over this proceeding under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, 28 U.S.C §§ 1332(d)(2), *et seq.* In addition, there is minimal diversity of citizenship in this mass action, and the amount-in-controversy requirements for a mass action under CAFA are satisfied on the face of the Original Petition. *See* 28 U.S.C. § 1332(d)(2), (d)(11)(b). Accordingly, this case is a mass action under CAFA over which this Court has original jurisdiction.

## I. The Court Can and Should Resolve Personal Jurisdiction Before Ruling on Subject-Matter Jurisdiction.

### A. The Court Has Discretion To Choose Among Preliminary Jurisdictional Issues.

8. This Court has the authority to decide the issue of personal jurisdiction before subject-matter jurisdiction. Jurisdictional questions ordinarily must be resolved before addressing the merits, but it is well established that jurisdictional questions may be decided in any order. *See Lance v. Coffman*, 549 U.S. 437, 439 n.* (2007) (affirming the principle that "there is no unyielding jurisdictional hierarchy"); *Ruhrgas*, 526 U.S. at 575 ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

### B. This Court Should Decide Personal Jurisdiction Before Ruling on Subject-Matter Jurisdiction.

9. This Court should follow *Ruhrgas* and, applying *Daimler*, *Goodyear*, and *Monkton*, find that the Other Plaintiffs cannot establish personal jurisdiction over Defendants. *Ruhrgas* involved the same set of motions this Court (or the Ethicon MDL Court) is likely to face—a motion to dismiss for lack of personal jurisdiction and a motion to remand for an alleged lack of federal subject-matter jurisdiction. The Supreme Court affirmed the district court's decision to resolve personal jurisdiction and dismiss the non-diverse parties before examining the motion to remand. *See Ruhrgas*, 526 U.S. at 574 (holding that "in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy"); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("*Ruhrgas* held that there is no mandatory sequencing of jurisdictional issues." (internal quotation marks omitted)).

10. Following *Ruhrgas*, three discretionary factors support beginning the analysis with personal jurisdiction in this case. First, the personal-jurisdiction question invokes the very limits of a court's authority, as it arises directly from the constitutional protections of due process. In sharp contrast, the potential issue of subject-matter jurisdiction in this case—a lack of complete diversity where non-Texas Plaintiffs have putatively been joined—is purely statutory. *See Ruhrgas*, 526 U.S. at 584 ("[T]he impediment to subject-matter jurisdiction on which [plaintiff] relies . . . rests on statutory interpretation, not constitutional command. . . . In contrast, [defendant's personal-jurisdiction argument] relies on the constitutional safeguard of due process to stop the court from proceeding to the merits of the case.").

11. Second, "judicial economy and restraint" support beginning with personal jurisdiction. *Ruhrgas*, 526 U.S. at 586. The Court in *Ruhrgas* explained that "in most instances subject-matter jurisdiction will invoke no arduous inquiry[,]" and in such cases "expedition" and

federalism suggest beginning with subject-matter jurisdiction. 526 U.S. at 587. But where, as here, a case presents a "straightforward personal jurisdiction issue" and the subject-matter jurisdiction question is more difficult, these discretionary considerations favor deciding personal-jurisdiction first. 526 U.S. at 586. Under *Daimler* and *Monkton*, the personal-jurisdiction question here is very clear—the Other Plaintiffs cannot establish general or specific personal jurisdiction over Defendants in Texas. *E.g.*, *Evans v. Johnson & Johnson,* 2014 WL 7342404, at *6 (S.D. Tex. Dec. 23, 2014) (Miller, J.). The subject-matter jurisdiction question, by contrast, presents a more searching inquiry, as it is grounded in the fraudulent misjoinder and sham joinder of the Other Plaintiffs. *See Ruhrgas,* 526 U.S. at 579–80, 587–88 (noting that the notice of removal asserted improper joinder and finding that inquiry "difficult"); *Carey v. Sub Sea Int'l, Inc.*, 2000 WL 329367, at *1–3 (5th Cir. Mar. 23, 2000) (unpublished) (affirming dismissal of non-diverse parties for lack of personal jurisdiction rather than beginning with the question of improper joinder).

12. Finally, this Court should begin with personal jurisdiction to provide clarity and certainty in this litigation. *Ruhrgas* provides an indisputable avenue for dismissal of the Other Plaintiffs. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94–95 (2010) (noting Supreme Court's discretionary preference for "[s]imple jurisdictional rules" that "promote greater predictability" rather than more "[c]omplex jurisdictional tests" which "eat[] up time and money" and "produce appeals").

## C. None of the Plaintiffs—Except Martha Murillo—Can Establish Personal Jurisdiction Over Defendants in Texas.

13. The burden of proof rests with each Plaintiff to make a prima facie showing that the Court has personal jurisdiction over each Defendant. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). The Other Plaintiffs—none of whom have alleged their residence, citizenship, or place of

implantation surgery—cannot establish personal jurisdiction over Defendants in Texas. Specific personal jurisdiction is a claim-specific inquiry that must be established for each claim brought by each plaintiff against each properly named and served defendant. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) ("Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause."); *followed, Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 767 (Tex. App.–Waco 2007, no pet.).

14. The Court does not have specific jurisdiction over the separate claims of the Other Plaintiffs because none of those Plaintiffs allege injury, much less residence or citizenship, in Texas. The Court does not have general jurisdiction over Defendants because none of these Plaintiffs allege that Defendants are incorporated in Texas or that Texas is their principal place of business. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–61 (2014) (limiting the exercise of general jurisdiction over a business corporation to its state of incorporation and principal place of business); *see also Locke v. Ethicon, Inc.*, 58 F. Supp. 3d 757, 762 (S.D. Tex. 2014) ("There is no dispute that the defendants [Johnson & Johnson and Ethicon, Inc.] are New Jersey corporations who are physically headquartered in New Jersey. The defendants are therefore 'at home' in New Jersey and not in Texas.").

15. Here, Plaintiffs acknowledge that Johnson & Johnson is incorporated under the laws of New Jersey and that it "does not maintain a regular place of business in this state [Texas]." (Orig. Pet. ¶ 4). As to Ethicon, Inc., Plaintiffs acknowledge that it is "a New Jersey corporation." (Orig. Pet. ¶ 5). Plaintiffs then baldly state that "[t]he Court has jurisdiction over nonresident Defendants because they purposefully availed themselves of the privileges and benefits of

conducting business in Texas by committing torts, which are the subject of this suit, in whole or in part in Texas." (Orig. Pet. ¶ 7).   The Court should not accept as true these kinds of "conclusory assertions without factual support." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 683 (S.D. Tex. 2014).  Moreover, this statement does not establish personal jurisdiction over Defendants, since it sets forth no facts that establish jurisdiction in Texas.

16. There are simply no factual allegations that Defendants committed the alleged tortious acts against any of the Other Plaintiffs in Texas. *See Kelly v. Gen. Interior Constr.*, 301 S.W.3d 653, 659–60 (Tex. 2010).  Thus, no specific jurisdiction exists as to the Other Plaintiffs over any of the claims that they allege against Defendants. *See In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2016 WL 640520, at *4 (N.D. Ill. Feb. 2, 2016) ("It would thus be unfair and contrary to the rationale underlying the minimum contacts doctrine to allow plaintiffs to use the Missouri plaintiff's claims as a hook to reel defendants into a series of separate trials in a distant and inconvenient forum to try issues unrelated to their conduct within the forum.").

17. Other federal courts have consistently held—*in cases filed by the same Plaintiffs' counsel*—that Defendants are not subject to general jurisdiction in Texas in similar pelvic-mesh, products-liability cases. *See, e.g.*, *Locke v. Ethicon, Inc.*, 58 F. Supp. 3d 757, 762–64 (S.D. Tex. 2014) (addressing personal jurisdiction first and determining that "Texas is simply not a forum in which it would be permissible to subject the defendants to general jurisdiction.  The defendants' operations in Texas are not so substantial and of such nature as to render them at home in the State.   Because the out-of-state plaintiffs cannot meet their burden of establishing personal jurisdiction over these New Jersey defendants, dismissal of their claims is proper."); *Evans v. Johnson & Johnson*, 2014 WL 7342404, at *4–6 (S.D. Tex. Dec. 23, 2014) (addressing personal jurisdiction first and determining that "an exercise of personal jurisdiction over the out-of-state

defendants in this case would extend beyond the reach of the Texas long-arm statute"); *Bragg v. Johnson & Johnson*, 2015 WL 4889308, at *5–7 (S.D. W. Va. Aug. 17, 2015) (considering petition originally filed in Texas state court, addressing personal jurisdiction first, and holding that "[c]onsidered in the light most favorable to plaintiffs, no facts alleged here suggest the kind of corporate activity in Texas that the Supreme Court has found sufficient to confer all-purpose jurisdiction over a corporate defendant.  The plaintiffs have failed to show the alleged injuries of the out-of-state plaintiffs occurred in Texas, and the argument that the defendants market and sell large amounts of products in the forum is unavailing for purposes of general jurisdiction."); *Evans v. Johnson & Johnson*, 2015 WL 1650402, at *4–6 (S.D. W. Va. Apr. 14, 2015) (same); *Huston v. Johnson & Johnson*, 2015 WL 1565648, at *4–6 (S.D. W. Va. Apr. 8, 2015) (same); *Seymour v. Johnson & Johnson*, 2015 WL 1565657, at *4–6 (S.D. W. Va. Apr. 8, 2015) (same); *Kraft v. Johnson & Johnson*, 97 F. Supp. 3d 846, 852–54 (S.D. W. Va. 2015) (same).

18. Once the Court dismisses the Other Plaintiffs who have alleged no facts establishing personal jurisdiction in Texas over Defendants, complete diversity of citizenship exists between Plaintiff Martha Murillo and Defendants.

## II.    This Court Has Original Subject-Matter Jurisdiction Over This Case Under 28 U.S.C. § 1332(a).

19. This Court has diversity jurisdiction under 28 U.S.C. §§ 1332(a) because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A. Once the Other Plaintiffs Are Dismissed, This Court Will Have Subject-Matter Jurisdiction Over This Case.

#### 1. The Amount-in-Controversy Requirement Is Satisfied.

20. Under 28 U.S.C. § 1446(c)(2)(B), removal is proper if the court finds, by a

preponderance of the evidence, that the amount in controversy exceeds $75,000, exclusive of interests and costs. *See White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) (quoting *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).[4] Here, each Plaintiff's claims put more than $75,000 in controversy, exclusive of interests and costs.

21. When, as here, "the petition does not state the dollar amount of damages sought, courts analyze the notice of removal." *Moore v. Gladiator Events, LLC*, 2015 WL 5459625, at *1 (N.D. Tex. Sept. 15, 2015). If the plaintiff does not contest that the amount-in-controversy requirement is met, "courts accept the removing party's allegation." *Id.* (citing *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014)). If the plaintiff contests the amount in controversy, "removal is proper if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* (citing *Dart*, 135 S. Ct. at 553–54) (internal quotation marks omitted).[5]

22. A petition that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (upholding removal based on a complaint seeking recovery in tort for "alleged damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and plaintiff's temporary inability to do housework

---

[4] The preponderance of the evidence standard was reaffirmed in the Federal Court Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. According to the House Report accompanying the bill, "circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied. The 'sum claimed' and 'legal certainty' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it." H.R. Rep. No. 112-10, at 15 (2011). Accordingly, "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 16.

[5] If the Court finds that the allegations of amount in controversy are deficient, Defendants are entitled to an opportunity to respond under the Supreme Court's ruling in *Dart. See Dart*, 135 S. Ct. at 554 ("In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount in controversy is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.").

after the hospitalization"). Moreover, in assessing the amount in controversy, a court may "make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim." *Robertson v. Exxon Mobil Corp.*, 2015 WL 9592499, at *3 (5th Cir. Dec. 31, 2015).

23. Each Plaintiff, including Martha Murillo, alleges that "the Pelvic Mesh Products have high failure, injury, and complication rates, fail to perform as intended, require frequent and often debilitating revision surgeries, and have caused severe and irreversible injuries, conditions, and damage to a number of women, including Plaintiffs." (Orig. Pet. ¶ 17). The Original Petition further alleges that "[a]s a result of the implantation of the Pelvic Mesh Products, Plaintiffs suffered and will continue to suffer serious bodily injuries, including pain, discomfort, pressure, difficulty voiding urine, continued incontinence, discharge, scarring, infection, odor, and bleeding." (*Id.* ¶ 38). The nature of these allegations alone establishes that the threshold amount in controversy of $75,000, exclusive of interest and costs, is met.

24. Each female Plaintiff requests damages for past and future "physical pain and mental anguish," past and future "disfigurement," past and future "physical impairment," past and future "loss of earning capacity," and past and future "medical care expenses." (Orig. Pet. ¶ 70(a)–(j)). In addition, each one of the Plaintiffs seeks exemplary damages, (*Id.* ¶ 71), which must also be considered in determining the amount in controversy. *See St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Moore*, 2015 WL 5459625, at *6–7.

25. Although Defendants deny any liability to Plaintiffs, these allegations of general, special, and exemplary damages clearly place more than $75,000 in controversy, exclusive of interest and costs, as to each Plaintiff. *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (holding that it was "facially apparent" that the amount-in-controversy requirement was met from allegations of injuries to wrist, knee, patella, and upper and lower back, seeking

recovery for medical expenses, pain and suffering, mental anguish, lost wages and earning capacity, and permanent disability and disfigurement); *Moore*, 2015 WL 5459625, at *5 (finding amount-in-controversy requirement satisfied where petition alleged that plaintiff "sustained severe injuries to her right ankle, foot and body in general, including a fracture in her right ankle which required screws and plates to fix and two surgeries," suffered past and future mental and physical pain and suffering, and incurred past and future medical-care expenses, as well as incidental expenses).

    **2.  Complete Diversity Exists Between Plaintiff Martha Murillo and Each of the Defendants.**

26. There is complete diversity between Plaintiff Martha Murillo and each of the Defendants.

27. Defendant Johnson & Johnson is, and was at the time Plaintiffs filed this case, a citizen of the State of New Jersey because it is incorporated under the laws of New Jersey and has its principal place of business in New Brunswick, New Jersey. *See* 28 U.S.C. § 1332(c)(1).

28. Defendant Ethicon, Inc. is, and was at the time Plaintiffs filed this case, a citizen of the State of New Jersey because it is incorporated under the laws of New Jersey and has its principal place of business in Somerville, New Jersey. *See id.*

29. Plaintiff Martha Murillo is a resident citizen of the State of Texas. (Orig. Pet. ¶ 2).

30. All Other Plaintiffs—who have not alleged any factual basis to subject Defendants to general or specific personal jurisdiction of the courts of Texas under the Texas long-arm statute or the Due Process Clause of the Fourteenth Amendment—are not entitled to pursue their claims in this Court, are improperly joined as plaintiffs, and should be dismissed from this case for lack of personal jurisdiction.

**B. Even if Subject-Matter Jurisdiction Is Decided First, This Court Has Subject-Matter Jurisdiction Over This Case.**

31. This Court has subject-matter jurisdiction in this case because complete diversity of citizenship exists under 28 U.S.C. § 1332(a) over the properly joined parties.

### 1.  The amount-in-controversy requirement is satisfied.

32. The amount-in-controversy is satisfied for Plaintiff Martha Murillo. (*See supra* ¶¶ 20–25).

### 2.  Complete diversity of citizenship exists over the properly joined parties.

33. The citizenship of Plaintiff Martha Murillo is indisputably diverse from that of Defendants. (*See supra* ¶¶ 26–29).  The Other Plaintiffs should not be considered when determining this Court's diversity jurisdiction because (a) they are improperly joined, as they have no possibility of recovery under Texas law, (b) they are improperly joined under Rule 20(a), and (c) the joinder of the Other Plaintiffs is a sham.  This Court should exercise its right to dismiss the Other Plaintiffs in order to protect Defendants' right to remove and prevent Plaintiffs' attempted diversity-destroying jurisdictional manipulation, which the Supreme Court has expressly instructed that the federal courts should guard against.

### 3.  The Other Plaintiffs are improperly joined, as their claims have no reasonable basis under Texas law.

34. Improper joinder is an exception to the complete-diversity requirement. *See Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 572 (5th Cir. 2004); *Flagg v. Stryker Corp.*, 2016 WL 1169067, at *2–3 (5th Cir. Mar. 24, 2016).  Plaintiffs have alleged the residence of only one Plaintiff, who is diverse, and then summarily concluded that "[c]omplete diversity does not exist between the parties and therefore federal courts lack jurisdiction under 28 U.S.C. § 1332." (Orig. Pet. ¶ 11).  A federal district court may assume jurisdiction over the case, dismiss the non-diverse parties, and thereby retain subject-matter jurisdiction over the remaining claims if joinder of the non-diverse parties is improper or a sham. *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F.

Supp. 2d 555, 567 (N.D. Tex. 2009) (citing *Ralli-Coney, Inc. v. Gates*, 528 F.2d 572, 575–76 (5th Cir. 1976)).  A party has been improperly joined if there is "no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court." *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000) (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)); *see also Cooper v. McDermott Int'l, Inc.*, 1995 WL 450209, at *1 (5th Cir. July 6, 1995) (unpublished) (affirming district court's ruling that a party "had been fraudulently joined" because it lacked personal jurisdiction over the party).

35. The Other Plaintiffs are improperly joined because under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, their claims may not be brought under the United States Constitution in the courts of Texas.  Under Texas law, personal jurisdiction can only be exercised to the extent permitted by the Due Process Clause. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335–36 (5th Cir. 1999).  There are two basic ways to establish personal jurisdiction: specific jurisdiction and general jurisdiction.  The Other Plaintiffs cannot establish specific jurisdiction in Texas because they do not allege that their injuries occurred in Texas, nor even that they are residents or citizens of Texas. *See id.* (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)); *Felch v. Transportes La-Mex SA DE CV*, 92 F.3d 320 (5th Cir. 1996) (finding that the court had no personal jurisdiction over plaintiff's tort claim because plaintiff's injury did not arise from defendant's contacts with Texas, as the injury occurred outside of Texas and "all of the defendant's negligence, if any, occurred" outside of Texas).  The Texas court does not have general jurisdiction over the claims of the Other Plaintiffs because Defendants are not incorporated in Texas and do not have their principal places of business there. *See Dominguez v. Black Elk Energy, LLC*, 2014 WL 637072, at *4 (S.D. Tex. Feb. 18, 2014) ("For personal

jurisdiction to exist over an out-of-state defendant in Texas, however, the defendant would have to be subject to general jurisdiction, meaning its contacts with Texas are so 'continuous and systematic' as to render it 'essentially at home' here.") (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (limiting exercise of general jurisdiction over a business corporation to its state of incorporation or principal place of business)).

36. The Other Plaintiffs are improperly joined, as there is no permissible basis under the Due Process Clause for the courts of Texas to adjudicate their claims against Defendants. Because the Court may ignore the citizenship of improperly joined non-diverse parties for purposes of establishing subject-matter jurisdiction, the Court need not sever, and may simply dismiss, the Other Plaintiffs from this case. *See Locke v. Ethicon, Inc.*, 58 F. Supp. 3d 757, 762–64 (S.D. Tex. 2014); *Evans v. Johnson & Johnson*, 2014 WL 7342404, at *4–6 (S.D. Tex. Dec. 23, 2014).

### 4. Alternatively, the joinder of the Other Plaintiffs is improper under Rule 20(a), and they should be dropped under Rule 21.

37. Alternatively, this Court should deny a motion to remand (if one is filed) by severing and dismissing the claims brought by the Other Plaintiffs under Federal Rule of Civil Procedure 21.

38. A plaintiff may not destroy diversity through the improper misjoinder of parties or claims. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000). The Fifth Circuit has expressly recognized the validity of, and vital need for, the improper-misjoinder rule and, following the Eleventh Circuit's lead, has adopted this doctrine, including in circumstances similar to those presented here. *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) ("If these [Fed. R. Civ. P. 20(a) joinder] requirements are not met, joinder is improper even if there is no fraud in the pleadings and the plaintiff does have the ability to recover against each of the defendants."); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630–31

(5th Cir. 2002) (noting that "fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction").

39. Plaintiffs allege that the joinder of their claims is proper because their "claims arise out of a series of transactions or occurrences and there are questions of law and fact common to Plaintiffs' claims." (Orig. Pet. ¶ 9). Plaintiffs, however, allege absolutely no factual connection among their claims, aside from the basic fact that they each were allegedly implanted with one of Defendants' pelvic-mesh products. *See Stinnette v. Medtronic, Inc.*, 2010 WL 767558, at *2 (S.D. Tex. Mar. 3, 2010) (citing "[a] multitude of cases around the country [that] have held that plaintiffs were not properly joined when the only common link among them was a defective drug or medical device," and holding that claims were improperly joined).

40. The Original Petition does not allege injuries specific to each Plaintiff, but the injuries listed in the Original Petition, *see supra* ¶¶ 23–24, span a broad array of distinct, different injuries that Plaintiffs have failed to attribute to any single Plaintiff. *See Welsh v. Merck Sharpe & Dohme Corp.*, 2012 WL 1118780, at *4 (D.N.J. Apr. 3, 2012) (finding improper misjoinder where "[e]ach Plaintiff broadly alleges 'a long bone fracture'" but "no Plaintiff actually identifies which long bone was fractured, the type of fracture sustained, or how the fracture occurred").

41. In addition to the varying alleged injuries purportedly related to Plaintiffs' implantation with one or more of the pelvic-mesh products at issue, each one of the Plaintiffs undoubtedly has a unique medical history, which includes highly individualized conditions and symptoms that their surgeries were intended to treat, as well as unique gynecological, urological, and other medical histories. *See Boschert v. Pfizer, Inc.*, 2009 WL 1383183, at *3 (E.D. Mo. May 14, 2009) (holding plaintiffs were misjoined where the only commonality was the drug ingested and

17

citing cases holding misjoinder where plaintiffs had different exposure, injuries, and medical histories). Such significant variations among plaintiffs—like the variations here—have also been fatal to efforts at joinder in Texas state courts. *See, e.g.*, *Adams v. Baxter Healthcare Corp.*, 998 S.W.2d 349, 358–59 (Tex. App.–Austin 1999, no pet.) (finding the trial court properly severed the claims of out-of-state plaintiffs because "all but two of the plaintiffs received their implants from different physicians," putting the learned intermediary doctrine in play, and because the out-of-state plaintiffs' claims would be determined by foreign states' laws); *In re Jobe Concrete Prods., Inc.*, 2001 WL 1555656, at *8–9 (Tex. App.–El Paso Dec. 6, 2001, no pet.) (not designated for publication) (granting mandamus relief and finding the trial court erred in failing to sever plaintiffs' claims because they did not arise out of the same transaction when "[e]ach plaintiffs' exposure to the blasting and emission of substances, timing of the exposure, type of injury, causation, and damages will vary from plaintiff to plaintiff," even though the claims would share common questions of law).

42. The female Plaintiffs were allegedly implanted with various products and are "residents of various States throughout the country." (Orig. Pet. ¶ 3; Ex. 1 to Orig. Pet.). Different states' substantive laws will apply to these claims, and the implanting surgeons likely practiced different implantation techniques and provided different warnings to their respective patients, depending on the medical histories and conditions for treatment. These are important differences in Plaintiffs' individualized claims that make joinder particularly inappropriate here. *See, e.g.*, *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 1999 WL 554584, at *4 (E.D. Pa. July 16, 1999) ("The claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the transaction or occurrence requirement" and "go[] well beyond mere misjoinder."). In

sum, there is no apparent connection among Plaintiffs' claims, beyond the allegation—or simple listing—that they were implanted at some point in time with one or more pelvic-mesh products.

43. Further, the Original Petition alleges no facts that show or even suggest that the claims of the Other Plaintiffs have any nexus with the State of Texas or its courts. The Other Plaintiffs do not allege an injury within the State of Texas and do not allege that they purchased any goods or services from Defendants in the State of Texas. Any New Jersey Plaintiff(s) chose not to join consolidated litigation pending in their state, and they filed their tort claims in a Texas state court that has no personal jurisdiction under the federal Constitution, or the laws of Texas, over those claims (or for that matter, the tort claims of the Other Plaintiffs).

> **5. Alternatively, the joinder of the Other Plaintiffs is a sham, and this Court should dismiss the Other Plaintiffs' claims and enforce Defendants' right to remove.**

44. Finally, this Court should reject the blatant jurisdictional gamesmanship of Plaintiffs. Plaintiffs violated Texas Rule of Civil Procedure 79, which requires them to plead their residences. Despite naming the residence of only one Plaintiff (in Texas), Plaintiffs summarily conclude that diversity jurisdiction does not exist. (Orig. Pet. ¶ 11). The federal courts are authorized to exercise their Rule 21 power to sever and dismiss when joinder is merely a sham designed to defeat removal, as Plaintiffs have done here by artificially joining the Other Plaintiffs to this Texas case. This makes plain that the Other Plaintiffs are joined to this case solely in an attempt to defeat removal.

45. Under these circumstances, this Court should reject Plaintiffs' scheme to defeat diversity jurisdiction. *See Mississippi ex rel. Hood v. Au Optronics Corp.*, 134 S. Ct. 736, 745 (2014) ("We have interpreted the diversity jurisdiction statute to require courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying

diversity jurisdiction."); *see also Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185–86 (1907) ("[I]t is equally true that the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right . . . .").

46. This Court has the authority to sever and dismiss all claims brought by the Other Plaintiffs and retain jurisdiction over Plaintiff Martha Murillo's claims. *See* Fed. R. Civ. P. 21. "It is well settled that Rule 21 invests district courts with authority to allow a dispensable non-diverse party to be dropped at any time. . . ." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832–33 (1989) ("Almost every modern Court of Appeals faced with this issue has concluded that it has the authority to dismiss a dispensable nondiverse party by virtue of Rule 21."); *followed, McNamee-Blount v. Thomas*, 2001 WL 880355, at *1 (N.D. Tex. July 23, 2001) ("This Court has the authority to dismiss *dispensable* nondiverse parties, rather than dismissing the complaint."); *Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F. Supp. 2d 555, 567 (N.D. Tex. 2009) ("A district court may dismiss non-diverse defendants under Fed. R. Civ. P. 21 in order to maintain diversity jurisdiction.") (citing *RalliConey, Inc. v. Gates*, 528 F.2d 572–76 (5th Cir. 1976)).

47. This Court should dismiss the Other Plaintiffs not only in response to Plaintiffs' jurisdictional gamesmanship, but also to protect the Defendants' constitutional right to remove this action to federal court. *See Terral v. Burke Constr. Co.*, 257 U.S. 529, 532–33 (1922) (holding that foreign corporations have a "federal constitutional right . . . to resort to the federal courts" through exercise of their federal right of removal). A plaintiff cannot defeat a defendant's federal right of removal by naming an unnecessary and dispensable party to the controversy. *See Irvine for the Use of Lumberman's Bank v. Lowery*, 39 U.S. 293, 294 (1840) (dismissing unnecessary party plaintiff); *Salem Trust Co. v. Mfrs.' Fin. Co.*, 264 U.S. 182, 190

(1924) ("On the question of jurisdiction, an unnecessary and dispensable party, will not be considered."). As Justice Holmes explained, citing *Salem Trust*: "When a defendant seeks to remove a suit from a State Court to the District Court, of course he is entitled to contend that a party joined by the plaintiff is not a necessary party and therefore does not make the removal impossible by defeating the jurisdiction." *Lee v. Lehigh Valley Coal Co.*, 267 U.S. 542, 543 (1925). To protect this right to remove, the Supreme Court does not permit any party to engage in jurisdictional manipulation, even when permissible on its face, to defeat the diversity jurisdiction of the federal district courts.[6]

48. Accordingly, this Court should find that the joinder of the Other Plaintiffs to this Texas case is a sham, and sever those Plaintiffs from this case. Upon that occurring, diversity jurisdiction will exist between Ms. Murillo, the remaining Plaintiff, and Defendants. The Other Plaintiffs may then be dismissed for lack of personal jurisdiction. *See Daimler*, 134 S. Ct. at 760; *Locke v. Ethicon, Inc.*, 58 F. Supp. 3d 757, 762–64 (S.D. Tex. 2014); *Evans v. Johnson & Johnson*, 2014 WL 7342404, at *4–6 (S.D. Tex. Dec. 23, 2014).

## III.     Alternatively, This Court Has Original Subject-Matter Jurisdiction Over This Case Under CAFA.

49. The mass-action provision of CAFA provides another independent basis for removal of this case. Under that provision, this Court has original subject-matter jurisdiction over a "mass

---

[6] In fact, the Supreme Court and the federal appellate courts have consistently exercised their discretionary authority to fight a variety of manipulative artifices designed to destroy diversity, including (1) naming unnecessary parties as a plaintiff or as a defendant, *Irvine for the Use of Lumberman's Bank v. Lowery*, 39 U.S. 293 (1840); *Salem Trust Co.*, 264 U.S. at 189; (2) improper attempts to realign a part for the purpose of both creating or defeating diversity, *see City of Indianapolis v. Chase Nat'l Bank*, 314 U.S.C 63 (1941) (realigning a defendant as a plaintiff and remanding suit to state court based on lack of diversity post-realignment); (3) the naming of nominal parties, *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460, 461 (1980); (4) permissible but nonetheless sham practices by the plaintiff or the defendant, *see Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010); (5) the plaintiff's filing of non-binding stipulations, *see Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013); and (6) improper misjoinder of cases not arising from the same transaction or occurrence, *see Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1343 (11th Cir. 1996); *In re Benjamin Moore & Co.*, 318 F.3d 626 (5th Cir. 2002) (noting that "fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent jurisdiction").

action"—"any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . ."—and in which CAFA's other jurisdictional requirements such as minimal diversity and amount in controversy are met.  28 U.S.C. § 1332(d)(11)(B)(i); *see also* 28 U.S.C. § 1332(d)(11)(A).

### A. This Case is a "Mass Action."

50. This case is removable as a "mass action" under CAFA because it involves claims of monetary relief of 100 or more persons proposed to be tried jointly on the ground that Plaintiffs' claims involve common questions of law or fact.  *See* 28 U.S.C. § 1332(d)(11)(B)(i).

51. Here, Plaintiffs propose that their claims be tried jointly because they specifically allege that "there are questions of law and fact common to Plaintiffs' claims."  (*See* Orig. Pet. ¶ 9).[7]

52. That Plaintiffs propose to try their claims jointly can be presumed from their pleadings. They have filed one complaint and paid one filing fee; thus they propose that all the claims asserted in the Original Petition should be tried jointly.  (*See* Orig. Pet. ¶ 71 (seeking damages "in an amount to be determined by the jury"));  *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 769 (7th Cir. 2008) (affirming the district court's determination that "one complaint implicitly proposes one trial"); *Aburto v. Midland Credit Mgmt., Inc.*, 2009 WL 2252518, at *3 (N.D. Tex. July 27, 2009) ("The Court agrees with the Seventh Circuit's conclusion [in *Bullard*] that whether a single trial encompassing the claims of 100 or more plaintiffs actually occurs is not the determining factor; instead, the question is whether one trial has been proposed.").

---

[7] CAFA's requirement that mass actions involve common questions of law or fact is broader than the federal joinder standard.  The joinder standard requires plaintiffs to assert claims that both (a) share a common question of fact and law, *and* (b) arise out of the same transaction, occurrence, or series of transactions and occurrences.  *Compare* 28 U.S.C. § 1332(d)(11)(B)(ii)(I), *with* Fed. R. Civ. P. 20(a)(1).  Thus, courts have found that jurisdiction is proper under CAFA even when determining that plaintiffs are misjoined.  *See, e.g., Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 868, 870 (9th Cir. 2013) (affirming CAFA jurisdiction but finding that plaintiffs were misjoined under Rule 20(a)); *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 232–33 (E.D.N.Y. 2013) (same).

**B.  Minimal Diversity Exists.**

53. Minimal diversity requires only that at least one plaintiff is not a citizen of the same state as at least one defendant. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(11)(A).

54. Defendant Johnson & Johnson is, and was at the time Plaintiffs filed this case, a citizen of New Jersey because it is incorporated under the laws of New Jersey and has its principal place of business in New Brunswick, New Jersey. *See* 28 U.S.C. § 1332(c)(1).

55. Defendant Ethicon, Inc. is, and was at the time Plaintiffs filed this case, a citizen of the state of New Jersey because it is incorporated under the laws of New Jersey and has its principal place of business in Somerville, New Jersey. *See id.*

56. Plaintiff Martha Murillo is a resident citizen of the State of Texas.  (*See* Orig. Pet. ¶ 2).

57. Minimal diversity is therefore satisfied for purposes of CAFA because Plaintiff Martha Murillo is not a citizen of the same state as at least one Defendant.

**C.  The Amount-in-Controversy Requirement Is Satisfied.**

58. CAFA provides that original jurisdiction exists over mass actions in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, *see* 28 U.S.C. § 1332(d)(2), and that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]." *See* 28 U.S.C. § 1332(d)(11)(B).

59. Section 1332(a) requires that the amount in controversy exceed "the sum or value of $75,000, exclusive of interest and costs . . . ." *See* 28 U.S.C. § 1332(a).

60. For removal purposes in a mass action under CAFA, then, Defendants need only establish that "(1) the aggregate amount in controversy exceeds $5 million and (2) at least one plaintiff's claim satisfies the $75,000 individual amount in controversy." *Robertson v. Exxon*

*Mobil Corp.*, 2015 WL 9592499, at *2 (5th Cir. Dec. 31, 2015) (citing *Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 85–86 (5th Cir. 2013)).[8]

61. As discussed, *supra* ¶¶ 20–25, each Plaintiff's alleged claims put more than $75,000 in controversy; taken together, then, the $5 million CAFA requirement is easily met. *See Robertson v. Exxon Mobil Corp.*, 2015 WL 9592499, at *3 (5th Cir. Dec. 31, 2015) (citing cases in which the court used common sense to infer that the amount put at stake by the plaintiffs' alleged injuries was above the jurisdictional minimum); *Boulanger v. Devlar Energy Marketing, LLC*, 2015 WL 7076475, at *8 (N.D. Tex. Nov. 13, 2015) (finding that 111 plaintiffs' claims, which included 11 wrongful-death claims and 17 property and business economic-loss claims, would more likely than not collect well over $5,000,000, and that at least one of the 11 wrongful-death claims likely exceeded $75,000);

62. From the face of the Original Petition, it is apparent that *each* Plaintiff's claims put more than $75,000 in controversy. *See supra* ¶¶ 20–25. It is also facially apparent that the aggregate CAFA minimum of $5,000,000 is not only met but exceeded.

**D. No Exceptions to CAFA Apply.**

63. Plaintiffs bear the burden of demonstrating that any exception to CAFA jurisdiction applies. *See Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir. 2006). In any event, none of the exceptions to CAFA jurisdiction set forth in 28 U.S.C. § 1332(d)(11)(B)(ii) apply here.

64. Plaintiffs do not contend that all of their alleged injuries occurred in Texas or contiguous

---

[8] Although it did not decide the issue, the Fifth Circuit recently noted that it had "no reason to question the Eleventh Circuit's sound reasoning" in rejecting "the view, not yet embraced by any circuit, that CAFA imposes a threshold removability requirement that *at least* 100 plaintiffs satisfy the individual jurisdictional amount." *Robertson v. Exxon Mobil Corp.*, 2015 WL 9592499, at *2 n.2 (5th Cir. Dec. 31, 2015) (citing *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1203–07 (11th Cir. 2007)). The Eleventh Circuit "chiefly reasoned that such a construction would negate the $5 million aggregate amount-in-controversy requirement by making the aggregate requirement variable, but always greater than $7.5 million." *Id.* (citing *Lowery*, 483 F.3d at 1204–05); *see also Greco v. Jones*, 992 F. Supp. 2d 693, 696–97 (N.D. Tex. 2014). Regardless, as set forth above, each Plaintiff's claims put more than $75,000 in controversy, exclusive of interest and costs.

states. *See* 28 U.S.C. §1332(d)(11)(B)(ii)(I). Plaintiffs' claims are not being "joined upon motion of a defendant," 28 U.S.C. § 1332(d)(11)(B)(ii)(II), nor are they alleged on behalf of the general public "pursuant to a State statute specifically authorizing such action." 28 U.S.C. § 1332(d)(11)(B)(ii)(III). The claims have not been coordinated only for pretrial proceedings; instead, they are brought to be tried together. 28 U.S.C. § 1332(d)(11)(B)(ii)(IV). Finally, Plaintiffs have not alleged that more than one-third of the Plaintiffs are from Texas. Instead, they have not alleged the residence of the Other Plaintiffs at all. Thus, jurisdiction under CAFA is mandatory. 28 U.S.C. § 1332(d)(3).

## IV. Defendants Have Satisfied the Procedural and Venue Requirements for Removal.

65. Plaintiffs filed their Original Petition on March 3, 2016. Plaintiffs have named as defendants Johnson & Johnson and Ethicon, Inc. Copies of the proceedings from the state court action are attached as Exhibit A. In accordance with Local Rule 81.1, this Notice of Removal is filed with the following:

- A completed civil cover sheet;

- A supplemental civil cover sheet;

- A certificate of interested persons for Ethicon, Inc.;

- A certificate of interested persons for Johnson & Johnson;

- An index of all documents filed in the 68th Judicial District Court of Dallas County, Texas (Exhibit A);

- A copy of the Civil Case Information Sheet (Exhibit A-1);

- A copy of Original Petition (Exhibit A-2);

- A copy Issue Citation (Exhibit A-3)

- A copy of Issue Citation Comm. of Ins. or SOS (Exhibit A-4);

- A copy of Request for Service (Exhibit A-5);

- A copy of Citation (Exhibit A-6);

- A copy of Citation SOS/COI/COH/HAG (Exhibit A-7);

- A copy of Ethicon, Inc.'s Special Appearance (Exhibit A-8);

- A copy of Ethicon, Inc.'s Answer Subject to Special Appearance (Exhibit A-9);

- A copy of Plaintiffs' Notice of Nonsuit (Exhibit A-10);

- A copy of Johnson & Johnson's Special Appearance (Exhibit A-11);

- A copy of Johnson & Johnson's Answer Subject to Special Appearance (Exhibit A-12);

- A copy of the docket sheet from the 68th Judicial District Court of Dallas County, Texas (Exhibit B).

66. Exhibits A-1 to A-12 represent all documents filed with the 68th Judicial District Court of Dallas County, Texas.

67. Ethicon, Inc. received a copy of the citation and Original Petition on March 10, 2016.

68. Johnson & Johnson received a copy of the citation and Original Petition on March 28, 2016.  Removal is, therefore, timely under 28 U.S.C. § 1446(b).

69. The 68th Judicial District Court of Dallas, County Texas is located in the Northern District of Texas, Dallas Division, *see* 28 U.S.C. § 124(a), and venue for this action is proper in this Court under 28 U.S.C. § 1441(a) because the Northern District of Texas, Dallas Division, embraces the place in which the removed action was pending.

70. No previous application has been made for the relief requested herein.

71. Immediately following the filing of this Notice of Removal, written notice of the filing of this Notice will be delivered to Plaintiffs' counsel, as required by 28 U.S.C. § 1446(d). Defendants will promptly file a copy of this Notice with the Clerk of the 68th Judicial District Court of Dallas County, Texas, as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendants give notice that the case bearing civil action number DC-16-02528 in the 68th Judicial District of Dallas, County Texas is removed to this Court under 28 U.S.C. § 1441.  Defendants request that this Court retain jurisdiction for all further proceedings in this case until the case is transferred to the appropriate MDL.

Respectfully submitted,

Cherry Petersen Landry Albert LLP

By: /s/ Scott P. Stolley
    Scott P. Stolley
    State Bar No. 19284350
    sstolley@cplalaw.com
    Kartik R. Singapura
    State Bar No. 24083863
    ksingapura@cplalaw.com

    Campbell Centre  I – North Tower
    8350 North Central Expressway
    Suite 1500
    Dallas, Texas 75206
    Phone (214) 265-7007
    Fax (214) 265-7008

    ATTORNEYS FOR DEFENDANTS
    JOHNSON & JOHNSON AND ETHICON,
    INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served by certified mail/return receipt requested and via the Court's CM/ECF system on the following this 6th day of April, 2016.

Tim K. Goss
tim@freeseandgoss.com
Tamara L. Banno
tammy@freeseandgoss.com
Freese & Goss, PLLC
3031 Allen Street, Suite 200
Dallas, Texas 75204

David P. Matthews
dmatthews@thematthewslawfirm.com
Julie L. Rhoades
jrhoades@thematthewslawfirm.com
Matthews and Associates
2509 Sackett Street
Houston, Texas 77098

/s/ Scott P. Stolley
Scott P. Stolley